**UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT**

CITIBANK, N.A., as assignee of : 
CITICAPITAL MUNICIPAL FINANCE, :
:
:
Plaintiff, :
:
v. : Case No. 2:11-cv-214
:
CITY OF BURLINGTON and :
McNEIL, LEDDY & SHEAHAN, P.C., :
:
Defendants. :

## Memorandum Opinion and Order

Citibank, N.A. has filed a fifteen-count Complaint against the City of Burlington (the "City" or "Burlington") and McNeil, Leddy & Sheahan, P.C. ("McNeil"). The first thirteen counts, which implicate the City, range from breach of contract to breach of the U.S. Constitution's Contract Clause, and relate to a lease arrangement entered between the City and Citibank. The remaining two counts are lodged against McNeil for negligent misrepresentation and breach of contract for false statements made in an Opinion Letter that the law firm provided to Citibank on behalf of Burlington giving assurances as to the City's ability to make scheduled lease payments.

McNeil has moved to dismiss the two counts against it for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court grants in part and denies in part McNeil's Motion to Dismiss.

**BACKGROUND**

For purposes of addressing a motion to dismiss, the Court accepts as true all allegations set forth in the Complaint. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

McNeil served as legal counsel to the City in the negotiation of the Master State and Municipal Lease/Purchase Agreement ("Master Lease") for the acquisition of a telecommunications network for Burlington Telecom, which was conceived in 1996 when city voters approved a measure to create a publicly-owned telecommunications system. Burlington entered into the Master Lease in August 2007. To satisfy Citibank's express condition for moving forward with the transaction, Burlington requested that McNeil provide an Opinion Letter addressing Burlington's ability to use the City's general fund to pay its Master Lease obligations. Citibank sought these assurances because Burlington's City Charter does not allow the use of taxpayer revenues to cover Burlington Telecom losses. Vt. Stat. Ann. App. Tit. 24 § 3-438(c)(1). The August 17, 2007 Opinion Letter, in part, stated:

> There is no prohibition of utilizing general fund revenues of the City for telecommunications activities. However, there is a specification that losses from telecommunications are not to be borne by the City's taxpayers, the State of Vermont or recovered in rates from electric ratepayers. The same restriction applies to costs incurred in the event of any abandonment or curtailment of the telecommunications systems by the City. We are advised that approximately 40% of general fund revenues are derived from other sources than through taxation of the City's taxpayers.

The Opinion Letter further states that Citibank, "its successors and assigns and any counsel rendering an opinion on the tax-

2

exempt status of the interest components of the Rental Payments, are entitled to rely on this opinion." Citibank relied on the representation in the Opinion Letter in agreeing to enter the Master Lease and advancing $33,500,000.00 to Burlington.

In the spring of 2010, Burlington ceased making payments to Citibank and informed it that all of Burlington's funds, regardless of their source, were deemed taxpayer revenues and were therefore not legally available for payment on the Master Lease. The only legally available funds according to the city were Burlington Telecom revenues. Exercising its rights under the Nonappropriation Clause of the Master Lease,[1] Burlington elected not to appropriate funds necessary to support its payment obligations for the fiscal year beginning July 1, 2010. The Master Lease was thus terminated and Citibank had the right under the Master Lease to obtain the leased equipment back from Burlington.

Citibank brought this suit against the City of Burlington and McNeil seeking damages, return of the equipment, and other relief. It brought two counts against the law firm: Count XIV, alleging that Citibank suffered injury due to McNeil's negligent misrepresentation in its Opinion Letter, and Count XV, alleging

---

[1] Section 7 of the Master Lease, which is titled "Nonappropriation," provides that "[s]hould Lessee fail to budget, appropriate or otherwise make available funds to pay Rental Payments under a Lease following the then current Initial Term or Renewal Term, that Lease shall be deemed terminated at the end of the then current initial Term or Renewal Term." At that point, "Lessee agrees, at Lessee's cost and expense, to peaceably deliver the Equipment then subject to that Lease to Lessor at the location or locations to be specified by Lessor."

3

that Citibank was a third party beneficiary of the legal services offered by the firm and that the firm breached its contract to provide reasonable, professional, and competent legal services.

McNeil has filed a Motion to Dismiss Count XIV on the ground that the Opinion Letter was not the proximate cause of Citibank's loss. It seeks to dismiss Count XV on the ground that it owed no duty of care to Citibank. The following discussion addresses Count XV first and then turns to Count XIV.

**DISCUSSION**

**I.  Standard of Review**

This Court recently articulated the standard for reviewing a motion to dismiss pursuant to Rule 12(b)(6):

> In *Ashcroft v. Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a Rule 12(b)(6) motion to dismiss. 556 U.S. 662 (2009). First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. This assumption of truth, however, does not apply to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.
> Second, a court must determine whether the complaint's well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that the defendant acted unlawfully.

*Gadreault v. Grearson*, No. 2:11-cv-63, 2011 U.S. Dist. LEXIS 119391, *9-10 (D. Vt. Oct. 14, 2011) (internal quotations and citations omitted).

**II.   Count XV – Third Party Beneficiary to Contract Between Burlington and McNeil, Leddy & Sheahan, P.C.**

Citibank claims that it is a third party beneficiary of the contract for legal services between McNeil and Burlington. This claim fails.  While Vermont courts have noted that other jurisdictions "have held lawyers liable to nonclient plaintiffs for negligence where the plaintiff is an intended third-party beneficiary of the attorney-client relationship," *Hedges v. Durrance*, 175 Vt. 588, 590, 834 A.2d 1, 4 (Vt. 2003), no Vermont court has recognized third-party claims against lawyers sounding in contract.  Plaintiff provides an insufficient basis for this Court to be the first to recognize such a claim under Vermont law.

Citibank alleges that McNeil "breached its contract to provide reasonable, professional and competent legal services to Burlington," Complaint ¶ 220, which proximately caused Citibank's damages, *id.* ¶ 221.  Citibank does not claim that McNeil breached any particular obligations contained in a contract between Burlington and the law firm.[2]  Rather, their claim amounts to an

---

[2]   Vermont courts have noted that other jurisdictions recognizing a third-party beneficiary theory require that the "primary and direct purpose" of the attorney-client relationship was to benefit the third party. *Hedges*, 175 Vt. at 590, 834 A.2d at 4; *Bovee v. Gravel,* 174 Vt. 486, 489, 811 A.2d 137, 142 (Vt. 2002).  Although Citibank has alleged that McNeil contracted with

assertion that McNeil did not perform its duties "in accordance with established standards of skill and care" that would be expected of the firm. *Bloomer v. Gibson,* 180 Vt. 397, 406, 912 A.2d 424, 430 (Vt. 2006). The "so-called contractual duties that the plaintiff raises are also general professional duties of a lawyer. Hence, this action is essentially a tort claim veiled as a breach of contract claim." *Bloomer*, 180 Vt. at 403-04, 912 A.2d at 428 (quoting and agreeing with trial court). This reasoning applies equally here. The Court will evaluate Citibank's claim as one sounding in tort.

It is well-established that to prevail on a tort claim alleging attorney negligence under Vermont law, plaintiff must demonstrate that it had an attorney-client relationship or was in privity with the defendant attorney. *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 894 F. Supp. 777, 784-85 (D Vt. 1995). "An attorney owes a duty of care only to the client and not to third parties." *Hedges,* 175 Vt. at 589, 834 A.2d at 3.

Plaintiff is unable to sustain an action for negligence in tort against McNeil because it lacks the necessary attorney-client relationship with the law firm. "A lawsuit against an

---

Burlington to provide legal services in connection with the Master Lease Agreement, Complaint ¶ 216, and that the contract was intended to benefit Citibank, *id*. ¶ 217, it has not alleged that the primary and direct purpose of the contract between Burlington and McNeil was for its benefit rather than to assist Burlington in securing financing. So, even if Vermont recognized such third party beneficiary claims, Citibank would not be able to sustain such a claim.

6

attorney for negligence requires . . . the existence of an attorney-client relationship which establishes a duty of care." *Hedges*, 175 Vt. at 589, 834 A.2d at 3. There is no precedent in Vermont law that provides this Court a basis to extend the reach of a negligence action to allow a third-party such as Citibank to bring a claim alleging failure to provide reasonable, professional and competent legal services against a law firm such as McNeil.

The non-Vermont cases on which Plaintiff relies in advancing its third-party beneficiary claim do not provide convincing analogies on which to base an extension of Vermont law to cover its claim. None of the cases involved opinion letters like the one provided by McNeil. *Credit Union Cent. Falls v. Groff*, 966 A.2d 1262 (R.I. 2009), involved embezzlement of funds by an attorney during the course of two real estate closings. There, the attorney failed to use proceeds from a loan to discharge two existing mortgages, instead pocketing the funds. The Court concluded that it would, for the first time in the jurisdiction, recognize that the liability of an attorney may extend to third-party beneficiaries of the attorney-client relationship if it is clear that the contracting parties intended to benefit the third party. 966 A.2d at 1272. The Court also stated that "because the attorney misfeasance is so blatant and the duty owed to the nonclient so clear, we are satisfied that the limited factual record is sufficient to support summary judgment in [plaintiff's] favor." 966 A.2d at 1274. Here, the

misfeasance – providing what turned out to be an incorrect opinion letter – is not equivalent to the embezzlement in *Credit Union Central Falls*, and does not provide sufficient grounds to formulate novel Vermont law.

*Blair v. Lawrence*, 21 P.3d 452 (Haw. 2001), involved a claim by co-trustees and beneficiaries of a trust against an estate attorney for negligently drafting the trust and preparing and filing estate tax returns. The court concluded that the circumstances allowed an exception to the strict privity requirement in attorney malpractice claims and that the attorney owed a duty to the beneficiaries of the trust. *Id.* at 260-63. Although Vermont has not adopted this exception even in estate-planning and will-drafting cases, it has recognized the potential for the exception's application in such limited situations. *Hedges*, 175 Vt. at 590, 834 A.2d at 4. Of course, the situation is inapposite here.

Finally, in *R.J. Longo Construction Company, Inc. v. Schragger,* 218 N.J. Super. 206 (App. Div. 1987), an attorney for a township had drafted an agreement between the township and the contractors that required the township to obtain certain rights of way for a construction project. Those rights of way were not obtained and the contractor filed suit. The court concluded that the provision in the contract "created a special fiduciary duty" that extended to the third-party construction company. *Id.* at 210. Citibank has alleged no such provision creating a special contractual duty on McNeil. Rather, it alleges the violation of

general professional duties of a lawyer, which in Vermont sounds in tort, not contract. *Bloomer,* 180 Vt. at 403-04.

Instead of blazing new legal trails that Vermont Courts have declined to mark, the Court will follow the path set in *Washington Electric*. In *Washington Electric*, certain Vermont utilities entered into power sales agreements with the Massachusetts Municipal Wholesale Electric Company. The parties relied on legal opinions providing that the Vermont companies could enter into the agreements. These opinions later proved to be wrong, leading to the voiding of the agreements. Massachusetts Municipal brought suit alleging that the law firms issuing the opinions were negligent. The court rejected the negligence claim, stating that "Plaintiffs have failed to provide the Court with 'persuasive grounds' to determine that the Vermont Supreme Court would reject its requirement of an attorney-client relationship in a cause of action for attorney negligence. . . Absent a clear determination by the Vermont Supreme Court that it intends to abandon its privity requirement, we adhere to the law as it currently stands in the state." 894 F. Supp. at 785. In this case, the Court reaches the same conclusion. Because Vermont law does not recognize third-party contract actions against lawyers, and, in negligence actions against lawyers, requires an attorney-client relationship or privity with the Defendant lawyer that Plaintiff has not alleged, the Court grants McNeil's Motion to Dismiss Count XV.

**III. Count XIV – Negligent Misrepresentation**

In contrast to its third-party beneficiary claim (which, as explained above, is considered as a negligence claim), Plaintiff's negligent misrepresentation claim does not require an attorney-client relationship. *Washington Elec.*, 894 F. Supp. at 789. The Restatement (Second) of Torts, which Vermont courts follow, provides:

> One who, in the course of business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(a) (1977).

Although no Vermont court has held an attorney liable for negligent misrepresentation to a nonclient, it is reasonable to assume that the Vermont Supreme Court would allow such a theory of recovery. The Vermont Supreme Court has stated that "[t]ypically, courts have allowed such claims where the client solicited an opinion letter from the attorney for the express purpose of inducing reliance by a third party, and the attorney was aware that the third party would rely and intended to induce such reliance." *Bovee v. Gravel,* 174 Vt. 486, 490, 811 A.2d 137, 142 (Vt. 2002). The Court noted, however, that such recovery may be pursued only where the relationship between the attorney and nonclient is "so close as to approach that of privity." 174 Vt. at 489, 811 A.2d at 142. This Court has allowed a claim based on this theory to proceed. *Washington Elec.,* 894 F. Supp. at 789.

In any event, for purposes of its Motion to Dismiss, McNeil concedes that Plaintiff's negligent misrepresentation claim may provide a basis of recovery. Def.'s Mem. at 12 n.1. Moreover, it accepts for purposes of the Motion to Dismiss Plaintiff's allegations related to other elements of the claim: that Citibank entered into a transaction in reliance on the McNeil opinion, and that McNeil failed to use reasonable care in issuing the opinion. Pl.'s Mem. at 13, Pl.'s Reply at 11.

McNeil also accepts that Citibank has alleged "transaction causation" or "but for" causation.[3] The Opinion Letter caused Citibank to enter the financial arrangement; but for the Opinion Letter, Citibank would not have entered the Master Lease Agreement. *See Emergent Capital Inv, Mgmt., LLC. v. Stonepath Group, Inc.,* 343 F.3d 189, 197 (2d Cir. 2003).

McNeil asserts, however, that Citibank's negligent misrepresentation claim should be dismissed because Citibank has failed to sufficiently allege that the Opinion Letter was the proximate cause of Citibank's injury; it fails to allege "loss causation."[4] "The law of proximate cause calls for a causal connection between the act for which the defendant is claimed to be responsible and which is alleged to be negligent and the

---

[3] Transaction causation is a concept utilized primarily in security law cases. To establish transaction causation, plaintiff must show that the "violations in question caused [it] to engage in the transaction in question." *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir. 1974).

[4] Loss causation means that the misrepresentations or omissions caused the economic harm. *Schlick*, 507 F.2d at 380. It is the equivalent of proximate cause.

resulting flow of injurious consequences." *Rivers v. Vermont,* 133 Vt. 11, 14, 328 A.2d 398, 400 (Vt. 1974). "Foreseeability, although an ingredient in the determination of negligence, is not a factor in the determination of proximate cause." *Id.*

McNeil urges that the injurious consequences did not flow from its opinion letter. Rather, the firm claims that it was Burlington's exercise of its rights under the nonappropriation clause of the Master Lease that was the proximate cause of Citibank's losses. This intervening event allegedly broke the chain of causation between the issuance of the Opinion Letter and Citibank's ultimate losses.

Citibank argues that the chain remains linked. Citibank required assurances that Burlington could access its legally available, non-taxpayer sources for payment on the Master Lease (Complaint ¶ 37); those assurances were provided in McNeil's Opinion Letter (*id.* ¶¶ 37-38); later the City explained that it could not access these sources of funds (*id.* ¶ 71);[5] and on this basis Burlington exercised its right of nonappropriation thus terminating the lease (*id.* ¶¶ 70-72, 82). As Citibank states, "the prohibition on the use of Burlington's General Fund and the availability of Burlington's General Fund may not be divorced from the concept of non-appropriation, and Burlington's failure

---

[5] The Public Service Board had made clear that no Burlington city funds were available for payment on the Master Lease. *See* VT Public Service Board, Ruling on Motion for Temporary Relief, Docket No. 7044 (Feb. 16, 2010); VT Public Service Board, Order on Partial Summary Judgment Motions, Docket No. 7044 (October 8, 2010).

12

to appropriate funds to render payments due under the Master Agreement is not an 'intervening event.'" Def.'s Mem. at 10.

Even if an intervening event occurs, it does not necessarily relieve the original tortfeasor of liability. "[I]f the initial negligence creates a situation making it likely that some other force or action will occur and bring about harm, responsibility remains with the original actor." *Dodge v. McArthur,* 126 Vt. 81, 84, 223 A.2d 453, 455 (Vt. 1966). Here, the assurances provided in the Opinion Letter created the situation – the entry into the Master Lease and subsequent nonappropriation and lease termination – that brought about the harm – the financial loss to Citibank. As the Complaint alleges, the very facts for which the Opinion Letter provided what proved to be false assurances underlay the reason that Burlington exercised its nonappropriation right. Complaint ¶¶ 37-38, 70-72. The Opinion Letter can be directly linked to the ultimate losses Citibank sustained. *See McCabe v. Ernst & Young, LLP,* 494 F.3d 418, 436 (3d Cir. 2007) (plaintiff must prove "that it was the very facts about which the defendant lied which caused its injuries.") (citation omitted).

The crux of the proximate cause issue is ultimately whether Burlington's reasons for its decision not to appropriate funds necessary to make the lease payment are relevant. McNeil argues that the reasons are not relevant. It was Burlington's lawful right to decline for any reason to appropriate funds and nonappropriation was a risk that Citibank assumed when it entered

into the Master Lease.  Citibank asserts that the reasons for Burlington's nonappropriation are indeed relevant and are directly connected to McNeil's assurances.  Citibank has the better position.  Even though Burlington could choose not to appropriate funds without cause and thus terminate the agreement, the allegations suggest that, in fact, it did so specifically because it could not access the general fund to make payments. Citibank has sufficiently alleged that Burlington chose not to appropriate funds because the analysis McNeil had provided was not correct, thus allowing the reasonable inference that it has alleged a claim upon which relief can be granted.  Accordingly, the Court denies McNeil's Motion to Dismiss as to Count XIV.

## CONCLUSION

For the foregoing reasons, the Court grants McNeil's Motion to Dismiss Count XV and denies its Motion to Dismiss Count XIV.

Dated at Burlington, in the District of Vermont, this 7th day of June, 2012.

/s/William K. Sessions III
William K. Sessions III
U.S. District Court Judge
